UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNY WHITE,

                              Plaintiff,                        12-CV-1081A(Sr)

v.

BUFFALO SPORT SERVICE, LLC,

                              Defendant.

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6.

Plaintiff commenced this action, *pro se*, alleging violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law. Dkt. #1. Currently before the Court is defendant's motion to dismiss the New York Human Rights Law claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and to dismiss the Title VII claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. #4. For the following reasons, it is recommended that defendant's motion be granted.

## BACKGROUND

Plaintiff's complaint alleges that he was employed by Buffalo Sport Service, LLC from September 12, 2005 through October 25, 2011 and that he was harassed on

the basis of his sex, not promoted, and terminated due to discrimination based upon race, color and sex. Dkt. #1, pp.2-4. Plaintiff sets forth the following facts in support of his claim:

> I notified the stand leader twice that Mary Anne Rosenhart was harassing me, cursing at me, yelling at me, hindering me from doing my job, throwing her hands at me as if she was going to hit me, kept getting in my face. The stand leader didn't do anything about it so Mary Anne kept at it. I notified the lead supervisor and nothing was done until she notified management. When management arrived at Pile High Deli they only talked to Mary Anne and no one came to Pile High On Tap to talk to me at all. Management was at the counter & told me to get my belongings because I was being suspended pending further investigation.

Dkt. #1, p.5. Plaintiff attached to his complaint a copy of the New York State Division of Human Rights' ("NYSDHR's"), Determination and Order after Investigation, which found no probable cause to believe that Buffalo Sport Service, LLC was engaging in unlawful discrimination because of plaintiff's race, color or sex. Dkt. #1-1, p.1. Specifically, the NYSDHR determined that

> The investigation did not reveal sufficient evidence to support a belief that Complainant was denied a promotion, or was terminated from his employment because of his race, color or sex. The investigation revealed that Complainant was suspended, then terminated for a 2nd incident of threatening physical violence to a coworker; the white female coworker was disciplined for use of profanity in the workplace. The record shows that in 2011, Respondent similarly terminated 4 other persons for "willful misconduct:" 2 are white and 3 are female. Review of the file indicates Complainant did not bid for the promotion he cites in the charge. There was no evidence to support a belief Complainant was treated differently or terminated from his employment because of his race, color or sex.

Dkt. #1-1, p.1. Plaintiff was advised that he could appeal the NYSDHR's Determination and Order after Investigation to the New York State Supreme Court and that he could

seek review of his Title VII claim with the U.S. Equal Employment Opportunity Commission ("EEOC"). Dkt. #1-1, p.1. The EEOC adopted the findings of the NYSDHR, dismissed plaintiff's complaint and issued plaintiff a Notice of Suit Rights on August 28, 2012. Dkt. #1-1, p.6. Plaintiff filed his complaint on November 7, 2012. Dkt. #1.

In opposition to defendant's motion to dismiss, plaintiff submitted a copy of his union grievance seeking reinstatement, his union's determination to not proceed to arbitration regarding plaintiff's termination, and a copy of the New York Unemployment Insurance Appeal Board's Decision affording plaintiff unemployment compensation based upon the following facts developed at hearing:

> The Claimant noticed that the woman assigned to Register 3 was serving customers beer in closed bottles and cans. He explained to her that company policy required the stand attendants to open beer containers before serving them to customers. The woman responded to the Claimant in a "smart-alecky" tone. The Claimant brushed off the woman's response. The Stand Leader was in the back of the stand cleaning on the deli side of the stand at the time. Later that evening the Claimant realized that the woman was not pouring the draft beer properly because the customers were complaining to him that the beer she had poured for them was 3/4 full of foam and asking him to re-pour their beer. The Claimant told the woman that if she didn't know what she was doing, he would be happy to assist her. The woman snapped at the Claimant that she knew what she was doing. The woman came at the Claimant yelling and cursing and throwing her hands about. The Claimant brushed off the comment, and went out to the front side of the stand to wipe down tables. After wiping down the tables, the Claimant returned inside the stand and advised the Stand Leader that he was being harassed by the associate on Register 3. The Stand Leader came out front and stated that "everyone needed to take a breath from each other." The woman at Register 3 started screaming and cursing at the Claimant in front of the Stand Leader. The Claimant told the Stand Leader he had had enough of the woman's nonsense. The Stand Leader did nothing. The Claimant went back outside the stand and wiped down tables again.

-3-

> After the Claimant returned to the stand, he then went to his beer cooler . . .. The woman came up from behind the Claimant, bent towards him, "got in [his] face," and started cursing and throwing her hands at him. The Claimant feared for his physical safety, because the woman had not complied with the Stand Leader's instruction to take a break. Rather than taking a break and cooling off, the woman had kept coming at him and harassing him. The Claimant told the woman she needed to go on the other side of the stand and leave him alone as the Stand Leader had specifically told her to. The woman then really got in the Claimant's face and swinging her hands; he did not know what her actions would be, and feared for his safety. He told her that she had better get away from him, or he would knock her out. The woman responded with profanity she didn't want to be in the stand; the Claimant said that wasn't his problem. . . . The woman again started yelling at the Claimant.
>
> The Claimant then left the stand and reported to higher management that the woman was harassing him, that he had complained to the Stand Leader, and the Stand Leader had not done anything about it. Two members of higher management came to the stand and spoke to the woman. No one spoke to the Claimant or asked him for his side of the story. The woman prepared a written statement; the Claimant was not asked to prepare a written statement.
>
> On November 2, 2011, the Claimant was discharged for violation of the Employer's policy, specifically because the Employer concluded after an investigation that the Claimant "behaved in an inappropriate and unprofessional manner, including making a comment that could be perceived as threatening." The woman received a verbal counseling.

Dkt. #9, p.5.

## DISCUSSION AND ANALYSIS

**New York State Human Rights Law**

Defendant argues that this Court lacks jurisdiction over plaintiff's New York Human Rights Law cause of action because plaintiff pursued his claim with the NYSDHR,

which issued a Determination and Order after Investigation dismissing plaintiff's claims. Dkt. #4-2, pp.2-3.

New York's election of remedies statute deprives New York courts of jurisdiction to hear claims filed with the NYSDHR which are dismissed for any reason other than administrative convenience, timeliness, or annulment of the election of remedies. N.Y. Executive Law § 297(9). Thus, the filing of a complaint with the NYSDHR generally bars plaintiff from commencing a lawsuit based on the same incident. *Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879, 883 (2d Cir. 1995). Since the NYSDHR dismissed plaintiff's discrimination claim after investigation, plaintiff's state law claim must be dismissed for lack of subject matter jurisdiction. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010).

**Title VII**

Defendant argues that plaintiff has failed to plead sufficient facts to plausibly suggest that he was subject to discrimination on the basis of his race, color or sex. Dkt. #4-2, p.5.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Where, as here, the plaintiff is appearing *pro se*, the Court must construe the complaint liberally and draw the most favorable inferences that the complaint supports, but may not invent factual allegations that have not been pled. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Twombly*, 550 U.S. at 555. Thus, a plaintiff need not plead a *prima facie* case of discrimination, but must give the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

"It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). In the instant case, however, plaintiff's complaint fails to allege any

facts to suggest that he was eligible for promotion or that he was denied such promotion or harassed or terminated because of his race, color or sex. Plaintiff does not even allege his race or color. Although the facts alleged suggest inappropriate, hostile behavior by plaintiff's co-worker, there is no factual basis to suggest that such behavior was occasioned by or in any way referenced plaintiff's race, color or sex. To the contrary, the facts presented by plaintiff at his unemployment hearing and submitted to the Court in opposition to defendant's motion to dismiss suggest that plaintiff's co-worker was reacting to plaintiff's criticism of her work performance and plaintiff's threat "to knock her out." Dkt. #9, p.5. More importantly, there is no factual basis to suggest that defendant's determination to terminate plaintiff following investigation of this incident was occasioned by or in any way referenced plaintiff's race color or sex. To the contrary, the facts presented by plaintiff at his unemployment hearing and submitted to the Court in opposition to defendant's motion to dismiss confirms the NYSDHR's determination that plaintiff was terminated following a second incident of threatening physical violence to a coworker.

## **CONCLUSION**

Based on the foregoing, it is recommended that defendant's motion to dismiss (Dkt. #4), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED: Buffalo, New York
May 29, 2013

    *s/ H. Kenneth Schroeder, Jr.*
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge